IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VASENGA F. TILI,<br><br>    Petitioner,<br><br>  vs.<br><br>MICHAEL STAINER, Warden,<br><br>    Respondent. | No. C 11-5737 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY**<br><br>(Docket Nos. 16 & 17) |

## INTRODUCTION

This is a habeas corpus case filed pro se by Petitioner, a state prisoner, pursuant to 28 U.S.C. § 2254. The Court ordered Respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## BACKGROUND

Petitioner was convicted of first degree murder in 2006 and sentenced to 50 years to life in state prison. (Ex 1, 2 CT 252, 254-256.)[1] Petitioner challenged this conviction on direct appeal, alleging juror misconduct and trial error. On appeal, the California Court of Appeal remanded the case to the trial court for a hearing to determine whether Petitioner was prejudiced by comments made by his brother to a juror during deliberations. (Ex. 3.) Following the hearing, the trial court found all errors to be

---

[1] Citations to "Ex." are to the record lodged with the Court by Respondent.

harmless, and re-sentenced Petitioner to the same term. (*Id.*) Petitioner appealed and the California Court of Appeal affirmed his conviction. (*Id.*) The California Supreme Court denied review on January 13, 2010. (Ex. 9.)

As grounds for federal habeas relief, Petitioner claims that (1) the absence of his counsel during an ex parte communication between the trial judge and Juror No. 4 violated his Sixth Amendment right to counsel; (2) communication between Petitioner's brother and Juror No. 4 during deliberations caused jury misconduct; and (3) he received ineffective assistance of counsel at the hearing on remand.

Petitioner's crimes need not be discussed in detail because they are not relevant to the claims in his petition. The factual background to Petitioner's claims took place during jury deliberations, and are summarized by the California Court of Appeal in relevant part, as follows:

> A jury convicted defendant Vasega F. Tili of first degree murder with personal use of a firearm. (Pen.Code, §§ 187, subd. (a), 189, 12022.53, subd. (d).) The trial court sentenced defendant to 50 years to life.
> On his first appeal, defendant contended that the trial court had an impermissible ex parte communication with a juror during deliberations, outside the presence of defense counsel, concerning a comment made to the juror by defendant's brother. We agreed and ordered a limited remand for further hearing. The trial court conducted a hearing, in the presence of counsel, and concluded the juror remained impartial and there was no adverse impact on jury deliberations and no prejudice to defendant.
>
> . . .
>
> "[Petitioner's] trial lasted 10 days. On the 11th day, June 22, 2006, the jury began to deliberate. The jury deliberated all day on June 26 and June 27. Sometime during the day of June 27, probably the afternoon, the jury submitted a written note to the court asking for the legal definitions of 'premeditated' and 'rash' 'for determining 1st or 2nd degree.' At 3:55 p.m. on June 27, the court convened with the parties and the jury present, and further instructed the jury on the definitions of first and second degree murder. The jury deliberated until 4:15 p.m. and the court recessed until the next day.
> "The jury began deliberations at 9:30 a.m. on June 28. At 9:55 a.m., the court received a communication from the bailiff and proceeded to confer with Juror No. 4 in chambers, without counsel present, but on the record. The only people in chambers were the court, Juror No. 4, and the court reporter.
> "Juror No. 4 told the court that as she was entering the courthouse that morning, defendant's 'whole family' was standing near the entrance, and Alex Tili

2

said, 'There's that bitch that's sitting on the jury.' Juror No. 4 was the only person entering the courthouse at the time, and assumed the comment 'must be directed at me.' She 'just walked in as fast as I could.'

"The court asked Juror No. 4 if she had told any other members of the jury about the comment. She replied, 'Well, they saw I was upset when I walked in, so I did say that the family was out there and I did tell them what happened. And they just said well, it's understandable because they know most likely what the verdict is after yesterday, so they are going to be upset.' (Presumably, defendant and his family expected a guilty verdict because of the jury's note of the previous day asking for further definition of the degrees of murder.)

"The court reminded the juror that she was 'still in the process of deliberation' and asked her if she 'could remain fair and impartial.' Juror No. 4 replied: 'Oh, yeah, definitely. And I told them I have no problem continuing. I ask that I please be escorted to my car when it's over, and that's it, and that's if we decide today.' The court agreed, and thanked the juror for bringing the comment to its attention. The juror then said that the comment 'just shook me up a little, but I'll be fine.' The court asked Juror No. 4 'not to mention it any more of the jurors so that they would understand,' and asked her to return to the jury room and continue her deliberations.

"The proceedings in chambers then concluded.

"The jury resumed deliberations at 10:00 a.m. At 1:15 p.m., the jury foreperson informed the bailiff that the jury had reached a verdict. While counsel gathered in the courtroom in preparation of hearing the verdict, the court informed them for the first time of its ex parte conversation with Juror No. 4.

"At 1:55 p.m., the jury delivered its verdict in open court. The jury convicted defendant of first degree murder and found that he personally and intentionally discharged a firearm.

"At some point, the court provided counsel with a reporter's transcript of the ex parte proceeding with Juror No. 4.

"Alex Tili was charged with intimidating a juror. (Pen.Code, § 95, subd. (c).) The bailiff investigated the charge by interviewing Alex Tili and Juror No. 4, who both gave written statements. The bailiff prepared a police report including those statements.

"In his report, the bailiff stated that Juror No. 4 told him the comment made her 'very nervous and afraid' and that upon entering the jury room she 'became teary eyed and upset.' In her written statement, written at 2:15 p.m.-after the verdict-Juror No. 4 added that 'I have been feeling nervous and afraid all day long.' In his written statement, Alex Tili denied saying anything to any juror. [Fn. omitted.]

"On August 18, 2006, and after receiving the transcript and the police report, defendant made a motion for a new trial based on the ex parte communication with Juror No. 4, which defense counsel aptly described as a voir dire. Defendant argued that the record did not show that Juror No. 4 could have remained fair and impartial. Defendant also objected that counsel did not have any input into the ex parte voir dire of Juror No. 4 regarding the comment, and no opportunity to voir dire the jurors present when Juror No. 4 told her fellow panel members about the comment-'to protect the integrity of this verdict which had not yet been arrived at.'

"The trial court found that Juror No. 4 did not have to be removed from the jury because of the emotional impact of the comment, and also found there was 'no evidence that in reaching the verdict that the jurors reached that they were guided by anything other than the evidence.'

3

"The court denied the new trial motion and sentenced defendant to 50 years to life."

. . .

We ordered a limited remand (Pen.Code, § 1260; People v. Braxton (2004) 34 Cal.4th 798, 818-819) to enable the court to "conduct a hearing, in the presence of the parties and their counsel, into the issues surrounding the comment made to Juror No. 4, her ability to remain impartial, and whether the witnessing of her emotional state by other jurors might have had any adverse impact on deliberations to the prejudice of defendant.

. . .

On remand, the trial court ordered disclosure of juror information (Code Civ. Proc., § 237). The court also ordered discovery to the defense of any statements elicited by the prosecution during its investigation prior to the hearing. Defendant filed a memorandum of points and authorities, arguing that there was a presumption of prejudice from (1) the denial of counsel at the ex parte communication with Juror No. 4, and (2) jury tampering, consisting of Alex Tili's communication with Juror No. 4 outside the courthouse.

The trial court conducted a hearing in the presence of defendant, his counsel, and the district attorney. Juror No. 4 testified. She reviewed a transcript of her ex parte communication with the trial judge and agreed it was accurate. She reviewed her statement to the bailiff and testified she remembered telling him she felt "nervous" all day on the 28th, but did not remember telling the bailiff she was "afraid."

Juror No. 4 testified that after she heard Alex Tili's comment and entered the courthouse, she walked into the jury room. The other jurors were waiting for her, the last one to arrive, to resume deliberations. "They" saw that she was "a little upset." "They" asked her what was wrong, and she told them what had happened.

Juror No. 4 only remembered two jurors, who were seated near her, responding to her. She did not believe the other jurors heard her say what had happened. She did not remember the names of the responding jurors.1 The responding jurors said something to the effect that the comment was understandable "based on what had happened the day before"-presumably the question to the court showing the jury was undecided only as to the degree of murder-and "that was pretty much it." The responding jurors "didn't think much of it, if anything. If anything, they were just consoling me and saying based on what had happened the day before, it's understandable the family would be upset and that was it." She did not speak to the responding jurors for very long.
No deliberations occurred that morning before Juror No. 4 was taken to see the trial judge. When Juror No. 4 went back to the jury room, she did not "tear up" or cry, and said nothing about the Alex Tili comment to the other jurors at any time. No juror mentioned the comment.

Between 10:00 a.m., when Juror No. 4 returned to the jury room, and 1:15 p.m., when the jury announced it had reached a verdict, no juror stated that defendant was not the person who had committed the crime. To the best of Juror No. 4's recollection, there were two or three ballots within that time frame. Juror No. 4 could not remember the breakdown of the voting, but testified, "We were unanimous ... on whether or not [defendant] was guilty, but we hadn't actually

4

> determined whether it was going to be based on the first or second degree."2
> At the hearing, both parties cross-examined Juror No. 4; defendant cross-examined her at length. The trial court offered the parties the opportunity to speak to other jurors. The People declined. Defendant also declined, citing the People's burden of proof.
> After oral argument, the trial court ruled as follows:
> "[T]he issue is whether what occurred to [Juror No. 4] outside the courtroom ... on the cusp of the verdict overcomes the presumption of prejudice whether it's characterized as juror misconduct [sic: 'jury tampering'] or whether it's characterized [as] the denial of the assistance of counsel at a critical stage, and whether there is any reasonable doubt as to whether the conduct [on] the courthouse steps or the perception of that conduct and the communication by [Juror No. 4] to the other jurors, and [the] mental processes of [Juror No. 4], could have kept at least one juror from voting for a first degree verdict.... Given the testimony that the condition of the jury room at that time ... was that the issue of identification had already been determined by the jury and so the only issue was between first and second degree, I do find beyond a reasonable doubt that Juror No. 4 did remain impartial and that the witnessing of her emotional state by other jurors had no adverse impact on deliberations to the prejudice of the defendant...."
> The trial court rearraigned defendant and resentenced him to 50 years.

*People v. Tili*, No. A122968, 2009 WL 3004419 (Cal. Ct. App. Sept. 22, 2009) at *1-5 (footnotes omitted).

## **STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to

5

that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the Petitioner's claims, the Court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## **DISCUSSION**

**I.      Petitioner's Claims**

    **A.      Absence of Counsel**

Petitioner claims that because he and his counsel were not present during the ex parte communication between Juror No. 4 and the trial judge, Petitioner was deprived of his Sixth Amendment right to counsel at the critical stages of the proceedings. He also argues that this constitutes structural error. (Pet. at 6-8.) The circumstances of the ex

parte communication with Juror No. 4 are straight-forward. The trial judge met with Juror No. 4 during deliberations after she reported hearing Petitioner's brother, Alex Tili, refer to her as a "bitch" outside the courthouse. Ex. 3 at 2-3. The trial judge spoke with Juror No. 4 in his chambers for no more than five minutes regarding the incident. *Id.* During the meeting, the trial judge posed five brief questions to Juror No. 4, relating exclusively to her ability to remain impartial for the remainder of the jury deliberations. Ex. 14, 8 at 1356-58.

The Sixth Amendment guarantees those accused of a state or federal crime the effective assistance of counsel at trial. *Strickland v. Washington*, 466 U.S. 668, 685 (1984). In order to satisfy the Sixth Amendment, counsel must be present at all "critical stages" of the prosecution, absent an intelligent waiver by the defendant. *United States v. Wade*, 388 U.S. 218, 226, 237 (1967); *United States v. Hamilton*, 391 F.3d 1066, 1070-71 (9th Cir. 2004). The stages of a prosecution deemed "critical" for the Sixth Amendment include arraignments, post-indictment identification lineups, hearing on pre-trial motion to suppress evidence, sentencing, court-ordered psychiatric examinations to determine competency to stand trial and future dangerousness, the decision whether to plead guilty, and the process of plea bargaining and period of potential cooperation with the government. *See id.* at 1070 (citing cases). Where counsel is absent during a critical stage, the defendant need not show prejudice because the adversarial process itself has become presumptively unreliable. *United States v. Cronic,* 466 U.S. 648, 659 (1984) ("The presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial.").

The issue is whether or not the ex parte communication was a "critical stage" of Petitioner's trial at which defense counsel's presence was required. Supreme Court case law and the trial record suggest that it was not. Section 2254(d)(1) restricts the source of federal habeas relief to "clearly established federal law," meaning the decisions of the

United States Supreme Court. 28 U.S.C. § 2254(d)(1). The Supreme Court has not identified ex parte communications between juror and judge as a "critical stage" of trial. To the contrary, it has acknowledged that the absence of defense counsel during an ex parte communication between a judge and a juror is not a structural error that would require automatic reversal. *Rushen v. Spain,* 464 U.S. 114 (1983). In *Rushen,* a juror went to the trial judge's chambers twice and told him that she was personally acquainted with the defendant's murder victim from a past homicide. *Id.* at 116. Defense counsel was not present at these meetings. *Id.* In denying the habeas claim, the Supreme Court held that, "[t]here is scarcely a lengthy trial in which one or more jurors do not have occasion to speak to the trial judge about something, whether it relates to a matter of personal comfort or to some aspect of the trial." *Id.* at 118-119. The communication with Juror No. 4 was the type that *Rushen* identified as a necessary "reality of courtroom life," and not one that necessarily requires defense counsel's presence. *Id.*

Petitioner misconstrues *Cronic* in arguing that the absence of defense counsel at all ex parte communications with jurors is structural error. (Trav. at 22.) The Court in *Cronic* stated that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Cronic,* 466 U.S. at 659. However, *Cronic* does not identify ex parte communications between judge and juror as a critical stage of trials. Rather, in discussing structural error, *Cronic* cites examples such as the lengthy interference with a defendant's access to counsel and a statutory limitation on counsel's ability to present a defense*. Id* at n. 25*, See, e.g., Geders v. United States*, 425 U.S. 80 (1976) (trial court's order preventing defendant from consulting his counsel about anything during a 17-hour overnight recess in the trial between his direct and cross-examination deprived defendant of his right to the assistance of counsel guaranteed by the Sixth Amendment); *Herring v. New York,* 422 U.S. 853 (1975) (invalidating New York statute conferring upon every judge in a nonjury

8

criminal trial the power to deny counsel the opportunity to make a summation of the evidence before the rendition of judgment). Unlike the situation in *Herring* or *Geders,* the communication here was brief and limited to the subject of Juror No. 4's impartiality. Ex. 14, 8 at 1356-58.

In the absence of any Supreme Court authority suggesting that the ex parte communication between judge and juror in this case as a "critical stage" of the trial, the state court's denial this claim was neither contrary to, nor an unreasonable application of, "clearly established federal law" within the meaning of 28 U.S.C. § 2254(d)(1). Consequently, federal habeas relief is not warranted on this claim.

### B. Jury Misconduct

Petitioner claims that because Juror No. 4 heard a comment made by his brother, Alex Tili, outside the courthouse, he was deprived of his right to a fair and impartial jury. (Pet. at 6-8.) As Juror No. 4 was entering the courthouse on June 28, 2006, for what would be the final day of deliberations, she heard Alex Tili say, "There's that bitch that's sitting on the jury." (Ex. 3 at 2-3.) On direct appeal, Petitioner's case was remanded for a hearing into the issues surrounding Juror No. 4's contact with Alex Tili, Juror No. 4's ability to remain impartial, and "whether her emotional state in front of other jurors might have had any adverse impact on deliberation to the prejudice of defendant." (Ex. 2 at 4-5.) The trial court found that the prosecution had established beyond a reasonable doubt that Juror No. 4 did remain impartial and that her communications with Alex Tili and the trial judge caused no prejudice. (Ex. 15 at 73 (citing *Chapman v. California*, 386 U.S. 18 (1967).) The California Court of Appeal affirmed Petitioner's conviction. (Ex. 3.)

The Sixth Amendment guarantees to the criminally accused a fair trial by a panel of impartial jurors. U.S. Const. amend. VI; *Irvin v. Dowd*, 366 U.S. 717, 722 (1961). "Even if only one juror is unduly biased or prejudiced, the defendant is denied his constitutional right to an impartial jury." *Tinsley v. Borg*, 895 F.2d 520, 523-24 (9th Cir.

1990) (internal quotations omitted). "[P]rivate communications, possibly prejudicial, between jurors and third persons, or witnesses, or the officer in charge, are absolutely forbidden, and invalidate the verdict, at least unless their harmlessness is made to appear." *Mattox v. United States*, 146 U.S. 140, 142 (1892). "[A] finding of juror misconduct gives rise to a presumption of prejudice that may only be rebutted with strong, contrary proof of harmlessness." *Xiong v. Felker*, 681 F.3d 1067, 1077 (9th Cir. 2012) (citing *Caliendo v. Warden of Cal. Men's Colony*, 365 F.3d 691, 696 (9th Cir. 2004).

Assuming the comment by Alex Tili constitutes a constitutional error, as the California Court of Appeal found, it is harmless. The harmlessness standard on federal habeas is that the petitioner is not entitled to relief unless the trial error "'had substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). Juror No. 4 consistently indicated that she could and did remain fair and impartial throughout deliberations. Ex. 3 at 9. She made statements to this effect first to the judge in chambers and later at the post-trial hearing. *Id.* At the post-trial hearing, Juror No. 4 did remember asking for an escort to her car, but she did not recall being "afraid." Ex. 15 at 19-20. When questioned on the effect of Alex Tili's statement, Juror No. 4 stated that she was just "shaken" and would "be fine." *Id.* Alex Tili's comment itself was not a direct threat to Juror No. 4. The epithet, though crass, did not imply a threat of physical harm. Alex Tili referred indirectly to Juror No. 4 rather than attempting to engage her in conversation. As a result, it is unlikely that the comment significantly impacted Juror No. 4's fairness and impartiality.

Second, only two jurors were even aware that Juror No. 4 had come into contact with Petitioner's family. Ex. 3 at 3. Juror No. 4 testified that these two jurors found hostility from Petitioner's family to be "understandable." *Id.* Furthermore, the judge

directed her not to mention the incident to other members of the jury, thereby protecting deliberations from the possibility of prejudicial influence. *Id*. Finally, Juror No. 4 was not visibly upset upon returning to the jury room after speaking with the trial judge, and she did not speak about the incident further. *Id.* at 9.

Third, the events leading up to and following the comment indicate that it did not result in actual prejudice. Juror No. 4 testified that, prior to the comment, the jury had already reached the issue of guilt and had merely to decide the degree to which Petitioner should be sentenced. Ex. 3 at 2-3, 7. Finally, the guilty verdict was announced less than four hours after the alleged error, suggesting that the error's effect was harmless. *Id.* at 7. The length of deliberations may be examined when assessing harmlessness. *See, United States v. Lopez*, 500 F.3d 840, 846 (9th Cir. 2007) ("Longer jury deliberations weigh against a finding of harmless error because lengthy deliberations suggest a difficult case.") (quoting *United States v. Velarde-Gomez*, 269 F.3d 1023, 1036 (9th Cir. 2001)).

Even assuming Alex Tili's comment was an error that implicated Petitioner's constitutional right to a fair and impartial jury, there is strong evidence that it did not result in actual prejudice against him to overcome the presumption of prejudice. As a result, the state court's denial of this claim was neither contrary to nor an unreasonable application of clearly established federal law, and Petitioner is not entitled to habeas relief based on his claim of jury misconduct.

## C. Ineffective Assistance of Counsel

Lastly, Petitioner claims that his trial counsel ("Cole") and appellate counsel ("Covin") violated his Sixth Amendment right to effective assistance by failing to examine jurors other than Juror No. 4 at the hearing conducted by the trial court after remand. Cole examined Juror No. 4 about any potential prejudice caused by the comment from Petitioner's brother. Cole and Covin were then offered an opportunity to call additional jurors to the stand, which they declined. (Ex. 15 at 33, 52.) Petitioner asserts

that they should have called the other jurors to see what effect, if any, the comments that Alex Tili made to Juror No. 4 had on them.

In order to demonstrate ineffective assistance of counsel, one must show that counsel's performance was deficient, and that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. 668. The relevant inquiry is not what defense counsel could have done, but rather whether the choices made by defense counsel were reasonable. *See Babbitt v. Calderon,* 151 F.3d 1170, 1173 (9th Cir. 1998). Furthermore, judicial scrutiny of counsel's performance must be highly deferential, and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

Petitioner asserts that Covin now views the decision not to examine other jurors as a mistake, and that this regret necessitates a finding of ineffective assistance. (Pet. at 9.) Covin, while indicating that she now believes the decision was a mistake, admits that she and Cole knowingly chose not to examine additional jurors in reliance on the presumption of prejudice in Petitioner's favor and the prosecution's burden of proving an absence of prejudice. (Pet. Mot. Dis., Covin Decl. ¶ 6.) Covin's opinion in hindsight is not dipositive, or even persuasive. The reasonableness of an attorney's conduct under the first prong of *Strickland* is judged by an objective standard and does not inquire into counsel's subjective state of mind. *Babbitt,* 151 F.3d at1175. The circumstances at the post-trail hearing indicate that defense counsels' decision not to question additional jurors was objectively reasonable. If the other jurors were called, they could well have given testimony fatal to Petitioner's cause. They could have testified, for example, that they did not know about the comments from Alex Tili to Juror No. 4, that they learned about it but it did not affect their ability to be impartial, that Juror No. 4 did not appear upset by them, or that they had already reached a guilty verdict. The fact that Juror No. 4 gave

consistent statements during deliberations and at the post-trial hearing that she could remain impartial, moreover, made this a distinct possibility. Counsel could reasonably decide not to risk disastrous testimony for their client and instead to choose a different tack — argue that the prosecutor had not met its burden of establishing harmlessness beyond a reasonable doubt. (Ex. 15 at 52.)

Moreover, even if defense counsels' tactical decision was objectively unreasonable, Plaintiff's claim fails under the second prong of *Strickland*. Petitioner bears the burden of showing that the result of the proceeding would have been different, absent the ineffective assistance. *Strickland,* 466 U.S. at 687-688. Plaintiff has not met his burden of affirmatively showing prejudice from defense counsels' failure to call additional jurors. Petitioner does not offer evidence, such as affidavits from additional jurors, indicating that they would have been available or that their testimony would have been helpful at the post-trail hearing.

As Petitioner cannot establish ineffective assistance of counsel under the first or second prong of *Strickland,* the state courts' rejection of this claim was neither contrary to nor an unreasonable application of federal law. Accordingly, Petitioner is not entitled to relief on this claim.

//

//

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED. Petitioner's motion to expand the record (dkt. 17) is GRANTED. Petitioner's motion for an evidentiary hearing (dkt. 16) is DENIED. A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Clerk shall enter judgment in favor of Respondent and close the file.

IT IS SO ORDERED.

DATED: December 5, 2012

JEFFREY S. WHITE
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

VASENGA F TILI,

        Plaintiff,

  v.

MICHAEL STAINER et al,

        Defendant.

Case Number: CV11-05737 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on December 5, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Vasega F. Tili
F41352
P.O. Box 7500
Crescent City, CA 95531

Dated: December 5, 2012

Richard W. Wieking, Clerk
By: Jennifer Ottolini, Deputy Clerk